## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GENUINE DUBMAX, INC., *et al.*, | * | |
| Plaintiffs, | * | |
| | * | Case No. SAG-11-0812 |
| v. | * | |
| GREEKTOWN LLC, f/k/a HALE/KSI LLC | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case has been referred to me for all proceedings by consent of the parties. [ECF No. 25]. This Memorandum addresses Defendant's Motion for Spoliation Sanctions [ECF No. 52]. I have considered the written submissions from both parties. [ECF Nos. 52, 56, 57]. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, Defendant's Motion for Spoliation Sanctions is GRANTED IN PART AND DENIED IN PART. Specifically, Plaintiffs will be precluded from introducing any evidence or testimony regarding alleged damage to any equipment that is unavailable for physical inspection during discovery, including evidence or testimony regarding any loss of clients or business revenue relating to such equipment.

**I.   Background**

On December 28, 2007, a fire occurred at an industrial property at 4500 Fait Avenue in Baltimore City ("the Fait Avenue property"). Second Am. Compl. ¶ 9. Defendant Greektown LLC, formerly known as Hale/KSI LLC, owned the Fait Avenue property. Second Am. Compl.

¶ 4. Plaintiffs Genuine Dubmax, Inc. and Alexander Karas (collectively "Plaintiffs") allege that, at the time of the fire, the Fait Avenue property was an unrehabilitated vacant structure. Second Am. Compl. ¶¶ 6-8. Plaintiffs further allege that Defendant failed to properly maintain the property as required by Baltimore City codes. *Id.* The fire caused smoke, ash and soot contamination to Plaintiffs' optical media and video duplication business. Second Am. Compl. ¶ 9. Plaintiffs allege that they sustained losses amounting to $3,400,000.00 in damaged or destroyed business equipment, furniture, and business revenue lost in relocating their operations. Second Am. Compl. ¶ 17.

After the fire, Plaintiffs filed a claim with their insurance company, Erie Insurance. Karas Aff. ¶ 10. During the course of Erie's investigation of Plaintiffs' claim, Erie hired contractors to prepare an inventory and to estimate the cost of cleaning and restoring Plaintiffs' equipment. Pl. Opp. Exh. 3 at 15, Def. Mot. Exh. D & E. The contractors provided an estimate in excess of the Erie policy limits. *Id.*

A few weeks after the fire, Plaintiffs moved the damaged equipment to a secured storage unit. Karas Aff. ¶ 4. Approximately two years later, in March, 2010, Plaintiffs owed more than $14,000 in unpaid storage charges. *Id.* ¶ 5. Plaintiffs agreed to take delivery of the damaged equipment in exchange for waiver of the unpaid storage charges. *Id.* In June, 2010, the damaged equipment was delivered to Plaintiffs' new business location. *Id.* ¶ 6. Because the new business location did not have sufficient storage room, and because Plaintiffs could not afford to maintain off-site storage, Plaintiffs arranged for removal of the equipment. *Id.* ¶ 7-8. As a result, Plaintiffs do not know the current whereabouts of thirteen out of fourteen original pallets of damaged equipment. *Id.* ¶ 8.

From the time of the fire through the time the equipment was removed, Plaintiffs did not believe they would be able to afford litigation regarding their losses from the fire. Karas Aff. ¶ 9, 12. Shortly before the expiration of the statute of limitations, Plaintiffs retained counsel. *Id.* ¶ 11-12. This lawsuit was filed on December 27, 2010, one day before the claim would be time-barred. [ECF No. 2]. In the Second Amended Complaint, Plaintiffs seek damages in the total amount of $3,400,000.00. Second Am. Compl. ¶ 17, 24. Since their lawsuit was filed, Plaintiffs have located one pallet of damaged equipment. Plaintiffs estimate the total value of the damaged equipment at $2,514,215.98, and the single located pallet contains equipment worth approximately $50,000.00. Although Plaintiffs have taken other steps to look for the remainder of the damaged equipment, Plaintiffs do not currently have custody or control over that equipment. Karas Aff. ¶ 13-14.

## II.     Spoliation Standards

Defendant contends that Plaintiffs spoliated the allegedly damaged equipment and that significant sanctions, including dismissal of Plaintiffs' case, are therefore warranted. Plaintiffs contend that they had no duty to preserve the equipment because they did not anticipate litigation at the time it was lost. Plaintiffs further contend that Defendant retains adequate evidence and information to defend the claim. Because Plaintiffs did have a duty to preserve the equipment for litigation, and because the evidence available to Defendant is an inadequate substitute for physical inspection of the allegedly damaged equipment, Plaintiffs' evidence at trial will be limited to the equipment that is available for inspection.

"The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Silvestri v. General Motors Corp.*, 271 F.3d 583,

590 (4th Cir. 2001) (*quoting Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991)). When imposing spoliation sanctions, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995).

"[R]esolution of spoliation motions are fact intensive, requiring the court to assess when the duty to preserve commenced, whether the party accused of spoliation properly complied with its preservation duty, the degree of culpability involved, the relevance of the lost evidence to the case, and the concomitant prejudice to the party that was deprived of access to the evidence because it was not preserved." *Goodman v. Praxair Services, Inc.,* 632 F. Supp. 2d 494, 508 (D. Md. 2009) (internal citation omitted).

> A party seeking sanctions for spoliation must prove the following elements: (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Id.* at 509 (internal citations omitted). The three prongs of that standard are addressed sequentially below.

### A. Duty to Preserve

The first factor is whether Plaintiffs had an obligation to preserve the damaged equipment in anticipation of litigation. "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri,* 271 F.3d at 591 (*citing Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). Plaintiffs submit that they

had no duty to preserve the equipment because they did not anticipate litigation when they discarded it. In fact, Plaintiffs contend that they did not form any intention to file a lawsuit until December, 2010.

Under Plaintiffs' theory, the sole determinative factor of "the reasonable anticipation of litigation" would be Plaintiffs' subjective intentions. As Plaintiffs concede, "Clearly, the only parties who are capable of knowing for a fact what the Plaintiffs' subjective intentions or anticipations on pursuing litigation were up to and including the time their items of business equipment were removed, are the Plaintiffs themselves." Opp. at 12. Allowing purely subjective analysis to govern the inquiry, even in situations where the resulting prejudice makes it nearly impossible for a defendant to defend a claim, is not tenable. That paradigm would permit a plaintiff to actively destroy evidence with impunity and wait until the near-expiration of statute of limitations before making the "decision" to sue. Without imputing any such malicious intent to Plaintiffs in this case, it is evident that the duty to preserve evidence must be governed by a more objective standard.

Courts have found that the duty arises to preserve when a party reasonably should have anticipated litigation. *See, e.g., Goodman,* 632 F.Supp.2d at 510 n.7 (*quoting Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 439 F.Supp.2d 524, 568 (E.D. Va. 2006) ("The point at which litigation becomes probable does not necessarily correspond with when a party anticipated, or reasonably should have anticipated, litigation."). Although Plaintiffs' financial circumstances may have rendered litigation improbable, the existence of a multi-million dollar alleged loss caused by another party indicates that litigation reasonably should have been anticipated. The mere fact that, nearly three years after the fire, Plaintiffs sought and retained legal counsel for this matter indicates that the possibility of filing litigation had not been rejected by Plaintiffs.

Plaintiffs therefore reasonably should have anticipated litigation as a viable, if not a probable, alternative.

Because Plaintiffs reasonably should have anticipated litigation over the fire damage, they had a duty to preserve the equipment, or at least to allow the prospective Defendant an opportunity to inspect the equipment. Accordingly, the spoliation inquiry proceeds to the remaining two factors.

### B.  Culpable State of Mind

Once a duty to preserve has been established, this Court is charged with evaluating the second factor: whether Plaintiffs acted with a culpable state of mind. The potential levels of culpability range from no culpability to bad faith, with intervening levels including negligence, gross negligence, and willfulness. The highest level of culpability, "bad faith," is clearly inapplicable here. "Bad faith" requires "destruction for the purpose of depriving the adversary of the evidence." *Goodman*, 632 F.Supp.2d at 520 (citing *Powell v. Town of Sharpsburg,* 591 F.Supp.2d 814, 820 (E.D.N.C. 2008)). No evidence of such purposeful destruction has been presented in the instant case.

Plaintiffs' actions, however, do amount to willful conduct. "Willfulness" does not require bad faith, but can instead be demonstrated by intentional or deliberate conduct resulting in spoliation. *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008). In this case, Plaintiffs intentionally divested themselves of the damaged equipment prior to initiating litigation against Defendant. As set forth above, at the time of the divesting, Plaintiffs reasonably should have known that the damaged equipment was relevant to anticipated litigation.

Plaintiffs' actions are analogous to those presented in *Vodusek*, 71 F.3d at 156-157. In that case, a boat explosion caused serious bodily injury and death to the boat's owner. *Id.* at 151.

The surviving spouse, Shirley Vodusek, filed suit against the manufacturer and repair company, alleging negligence and products liability claims. *Id.* at 150. In examining the boat to discover the cause of the explosion, Vodusek's expert "employed destructive methods which rendered many portions of the boat useless for examination by the defendants and their experts." *Id.* at 155. Vodusek's expert did preserve photographs of the boat prior to its destruction. *Id.* Although the Court found no evidence of bad faith, it did find willful conduct sufficient to allow an instruction permitting the jury to draw an adverse inference from Plaintiff's spoliation. *Id.* at 156. The Fourth Circuit affirmed the trial court's decision. *Id.* Plaintiffs' actions in this case, involving good faith spoliation of physical evidence warrant a similar finding of willful conduct.

### C. Relevance and Prejudice

The third and final factor in the spoliation analysis, relevance of the spoliated evidence, is the easiest for Defendant to establish in this case. The missing equipment constitutes the bulk of Plaintiffs' claimed $3,400,000.00 in damages. An inspection of that equipment would (1) reveal whether the fire caused any damage, (2) allow calculation of the fair market value of the equipment, and (3) permit a determination whether less costly remedies short of full replacement would be adequate. The equipment is therefore clearly relevant, if not essential, to the claims in this case. In addition, because the spoliation resulted from willful conduct, relevance can be presumed. *See Victor Stanley Inc.,* 269 F.R.D. at 532 ("When the party alleging spoliation shows that the other party acted willfully in failing to preserve evidence, the relevance of that evidence is presumed in the Fourth Circuit.") (*citing Sampson v. City of Cambridge,* 251 F.R.D. 172, 179 (D. Md. 2008)).

Defendant has also established prejudice as a result of its inability to examine the equipment. The sole evidence now available to establish the alleged damage is the testimony,

photographs, and records provided by Plaintiffs' witnesses and agents.  Pictures and reports generated by an adverse party cannot replace an actual physical inspection of the damaged items. *See, e.g.*, *State Farm Fire & Cas. Co. v. Frigidaire,* 146 F.R.D. 160, 163 (N.D. Ill. 1992) ("Moreover, any photographs taken are not a sufficient substitute for the dishwasher in its original post-fire condition.").  A party suffers prejudice where it cannot present "evidence essential to its underlying claim."  *Victor Stanley Inc.,* 269 F.R.D. at 532 (internal citation omitted).  Defendant claims that the damage to Plaintiffs' equipment is (1) overstated, (2) not causally connected to the fire, and (3) capable of remediation short of full replacement.  Because Defendant cannot conduct the inspections required to support those claims with appropriate expert testimony, it would suffer significant prejudice if Plaintiffs were allowed to present its proof relating to damaged, but currently unavailable, equipment.

### D.  Appropriate Sanction

Defendant requests dismissal of Plaintiffs' case.  However, that sanction would overcorrect for the damage caused by Plaintiffs' spoliation.  Dismissal "is usually justified only in circumstances of bad faith or other 'like action.'" *Silvestri*, 271 F.3d at 593 (citing *Cole v. Keller Indus., Inc.,* 132 F.3d 1044, 1047 (4th Cir. 1998)).  In this case, although the prejudice to Defendant would be extraordinary if Plaintiffs were permitted to enter unfettered evidence regarding their alleged damages, a remedy short of outright dismissal will permit Defendant the ability to fully and adequately defend the case.  Some of the allegedly damaged equipment has been located and will be made available for Defendant's inspection.  Plaintiffs should not be deprived of their opportunity to present their case as to allegedly damaged equipment that is available for examination.

To remedy the significant spoliation in this matter, however, this Court will preclude any testimony or evidence to establish causation or damages involving items of business equipment that are not available for Defendant's inspection during discovery. The preclusion will include any testimony regarding loss of clients or loss of business revenue attributable to the spoliated items.[1]  Plaintiffs will be free to adduce such evidence, including expert testimony, relating to any business equipment available for inspection by Defendant and its experts during discovery.

A separate order follows.


Dated:  May 10, 2012                                              /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge

---

[1] If an actual analysis of the revenues and clients attributable to the spoliated items proves impractical, this Court will consider allowing the amount to be calculated on an appropriate proportional basis.